UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CALVIN L. REDD | CIVIL ACTION NO. 19-0231 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| MIKE STONE, ET AL. | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Plaintiff Calvin L. Redd, a prisoner at Lincoln Parish Detention Center proceeding pro se and in forma pauperis, filed the instant proceeding on February 22, 2019, under 42 U.S.C. § 1983. He names the following Defendants: Sheriff Mike Stone, Warden Jim Tute, Police Jury Lincoln Parish, and Lincoln Parish Detention Center.[1]

Background

Plaintiff alleges that, on January 29, 2019, he slipped and fell attempting to climb in his "top bunk," which is "at least" 6.5 feet above the ground. [doc. #s 4, p. 3; 1, p. 1]. As a result of the fall, he endured pain, a physician implanted a metal plate in his jaw and removed two of his wisdom teeth, and the structure of his face is now "off balance." [doc. #s 1, p. 2; 4, p. 3; 9, p. 2]. He may require surgery again. [doc. # 9, p. 2].

Plaintiff maintains that he is fifty-three years of age and that he has problems with his grip due to a previous finger injury. [doc. # 4, p. 3]. In the past, a physician performed surgery on Plaintiff's broken finger joint and, subsequently, informed him that the finger would "never function again." [doc. # 1, p. 1].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that Sheriff Mike Stone and Warden Jim Tute violated unspecified rules, regulations, health codes, and safety codes when they installed "top bunks" and bunks exceeding the facility's capacity. [doc. #s 1, p. 2; 4, p. 3]. He suggests that the lack of side/guard rails on the bunk or "anything to grasp to avoid a fall" contributed to his fall. [doc. #s 1, p. 2; 4, p. 3]. He also alleges that the bed was installed too high. [doc. # 1, p. 1]. Further, he alleges that a shift supervisor turned off "the power to the entire unit" the night of his fall, implying that he fell due, in part, to the absence of light and his consequent inability to see. *Id.*

In his amended pleading, Plaintiff emphasizes that he seeks relief from Sheriff Mike Stone and Warden Jim Tute because, by adding "additional bed space," they rendered the facility "way over it[s] capacity" and violated "health codes . . . ." [doc. # 9, pp. 1, 3]. He adds that, in a fire emergency, the overcrowding "can cause an inmate to get hurt or kill[ed] trying to get to safety." *Id.*

Plaintiff seeks punitive damages, $100,000.00 in compensatory damages for his pain and suffering, and nominal damages. [doc. #s 1, p. 2; 4, p. 4; 10, p. 2].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of

the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Episodic Acts or Omissions**

Plaintiff is a pretrial detainee. [doc. # 9, p. 2]. The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine the applicable analysis, courts must first classify a plaintiff's challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). The former is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996). In contrast, an "episodic act or omission" claim concerns a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645.

Here, Plaintiff complains (1) that he was placed in a bed which was too elevated and which lacked guard/hand rails and (2) that a shift supervisor turned off the lights while he attempted to climb in bed. These are not allegations of general, widespread conditions, practices, rules, or restrictions. Rather, Plaintiff complains of episodic acts.[3] Thus, "[t]he relevant question becomes whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge . . . ." *Estate of Henson v. Wichita Cty., Tex.*, 795

---

[3] See *Delgado v. Ratcliff*, 213 F.3d 639 (5th Cir. 2000) (characterizing a claim that a plaintiff, who allegedly suffered from a debilitating back condition, was ordered to sleep in a top bunk and subsequently fell from the top bunk, as an episodic act or omission); *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999) (characterizing the plaintiff's claims, concerning two detention officers' failure to take better care of her and a third officer's failure to medically screen her, as episodic omissions).

F.3d 456, 463 (5th Cir. 2015) (internal quotation marks and quoted source omitted).

"A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and quoted sources omitted).

Here, Plaintiff first claims that Defendants assigned him a bed which (1) was too elevated and (2) lacked guard/hand rails. He suggests that the bed was too elevated for him, specifically, because of his previous finger injury. [doc. # 4, p. 3]. Likewise, he suggests that, because of his previous finger injury and his age, he required hand rails to climb in bed.

Plaintiff, however, does not allege that Defendants knew, or were aware of facts from which the inference could be drawn, that, because of his previous injury and his age, assigning him to a bed which was 6.5 feet above the ground and which lacked hand/guard rails posed a substantial risk of serious harm to him.[4] To the extent Plaintiff claims that, regardless of his prior injury, a bed lacking guard rails, which is 6.5 feet above the ground, is simply too high, he

---

[4] See *Delgado*, 213 F.3d at 639 (finding that the evidence failed "to show that the defendants were aware of any substantial risk to Delgado's health or safety regarding" his claim that, despite suffering from a debilitating back injury, he was ordered to sleep in a top bunk and subsequently fell from the top bunk); *Saldivar v. Davis*, 698 F. App'x 198 (5th Cir. 2017) ("The record does not support that the defendants were aware that by assigning Saldivar to a cell with a top bunk, she faced a substantial risk of serious harm, ignored that risk, and intended for her to be harmed."); *Eubanks v. Jordan*, 2008 WL 5068656, at *1 (5th Cir. Nov. 26, 2008) (finding "no evidence that Defendants knew that failing to assign Plaintiff to a lower bunk was substantially likely to result in his injury.").

fails to state a plausible claim. The condition he describes does not reflect an excessive risk to his health or safety.[5]

Finally, Plaintiff mentions that a shift supervisor turned off the lights the night of his fall, intimating that he fell due, in part, to the absence of light: "[F]or some particular reason on this night shift supervisor Joyce Jackson turn[ed] off the power to the [e]ntire unit." [doc. # 1, p. 1]. Plaintiff does not, however, name the shift supervisor as a defendant[6] or claim that any named defendant was responsible for the darkness. Thus, he fails to allege that any defendant knew of a substantial risk of serious harm and disregarded that risk.[7] Accordingly, these claims should be dismissed.

### 3. Overcrowding

Plaintiff alleges that Defendants installed 280 beds, which exceeded the facility's maximum capacity of "120 or 130 beds." [doc. # 4, p. 3]. By alleging that the extra beds are too

---

[5] Plaintiff's allegations amount to no more than possible negligent conduct. See *Saldivar*, 698 F. App'x at 199 ("At most, the decision to move Saldivar to a cell with a top bunk was negligence or a failure to ascertain a perceptible risk rather than deliberate indifference; Saldivar may not obtain relief on this basis."); *Patin v. LeBlanc*, 2012 WL 3109402, at *23 (E.D. La. May 18, 2012), report and recommendation adopted, 2012 WL 3109398 (E.D. La. July 31, 2012) (finding, where the plaintiff alleged that prison bunks lacked guard rails, that the claim "would at best be one of negligence."). Allegations of negligence do not state claims of constitutional dimension. *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence."). To the extent Plaintiff seeks to pursue negligence claims, he should do so in state court.

[6] As he originally named six defendants and then withdrew his claims against two defendants, Plaintiff is demonstrably capable of identifying individuals from whom he seeks relief.

[7] Even assuming Plaintiff did name the shift supervisor as a defendant, his claim would sound only in negligence.

high above the ground, he appears to claim that, had Defendants not installed the extra beds, he would not have been forced to sleep in the bed from which he fell. *Id.* As above, however, Plaintiff fails to state a plausible claim concerning the height of his bed; consequently, this circuitous, vague claim is likewise implausible.

To the extent Plaintiff claims that, aside from any harm stemming from his fall, the facility is simply overcrowded, his claim is entirely conclusory. A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Here, Plaintiff does not disclose enough facts to a state plausible claim. He provides no details and does not, for example, allege that he suffered any harm from overcrowding, that he will suffer imminent harm from overcrowding, that the overcrowding deprived him of an identifiable human need, or that Defendants punitively confine an excessive number of prisoners in the facility.

In his amended pleading, Plaintiff speculates that the number of prisoners in the facility violates an unspecified health code and that, "in an event of a fire emergency . . . an inmate [can] get hurt or kill[ed] trying to get to safety." [doc. # 9, p. 1]. However, he does not allege that he suffered harm or that he will imminently suffer harm. Because he only alleges conjectural risks, he lacks standing to pursue these claims. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that, to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or hypothetical[.]") (citations and internal quotation marks

omitted).[8]

Even assuming Plaintiff did allege that he suffered harm or will imminently suffer harm, and to the extent his claim of overcrowding is best characterized as a conditions of confinement claim, he fails to state a plausible claim. The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Courts must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. To determine whether the condition is a punishment, and therefore unconstitutional, courts must ascertain whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into

---

[8] See also *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) (holding that, because an inmate alleged no injury from a policy, he had no standing to raise a claim); *Colgrove v. Collins*, 62 F.3d 391 (5th Cir. 1995) (holding that a "speculative claim of injury is insufficient to satisfy Article III's requirements for standing.").

'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

Here, Plaintiff does not allege that the number of prisoners at his facility posed any imposition at all. See *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) ("Overcrowding of persons in custody is not per se unconstitutional."). Even construed liberally and in his favor, the conditions alleged amount to no more than a de minimis imposition and certainly do not approach punitive confinement. At best, Plaintiff claims that he is uncomfortable living in a facility housing approximately 280 prisoners. However, the "desire to be free from discomfort . . . . does not rise to the level of [a] fundamental liberty interest[] . . . ." *Bell*, 441 U.S. at 534 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'").

Insofar as the "*Bell* test" cannot be "meaningfully applied" in this context[9]—and thus to

---

[9] "If a pretrial detainee is unable to point to such an established rule or restriction, then he must show that the jail official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice to which the *Bell* test can be meaningfully applied." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).

the extent the deliberate indifference standard set forth above applies—Plaintiff does not identify a substantial risk of serious harm. He does not allege that the facility is particularly susceptible to fire or that, even if it is, it lacks a sufficient evacuation plan, enough escape exits, or enough employees to ensure that every prisoner escapes a fire safely. See *Johnson v. Texas Bd. of Criminal Justice*, 281 F. App'x 319, 322 (5th Cir. 2008) ("As Johnson did not allege that anyone had been injured by any type of fire or that Wynne was built from flammable materials or was particularly susceptible to fires, his allegations do not state a viable claim.").[10] Moreover, the alleged deficiency bears little, if any, relation to the condition or height of Plaintiff's bed, ostensibly his primary concern. Ultimately, Plaintiff's claim is conclusory and should, accordingly, be dismissed. See *Tweedy v. Boggs*, 983 F.2d 232 (5th Cir. 1993) (affirming the dismissal, as frivolous, of a proceeding where the detainee did "not allege that he has ever been assigned to a cell with too many prisoners" and alleged only "that the Center is 'often overcrowded' . . . .").

**4. Violation of Unspecified Rules, Regulations, and Codes**

Plaintiff claims that Defendants violated unspecified rules, regulations, health codes, and safety codes when they installed beds exceeding the facility's capacity. [doc. #s 4, p. 3; 1, p. 2]. He claims that the capacity is "around 120 or 130 beds," yet the facility is "housing at least 280 . . . ." He also suggests that Defendants violated unspecified codes by installing beds 6.5 feet

---

[10] See also *Billizone v. Jefferson Par. Corr. Ctr.*, 2015 WL 1897683, at *4 (E.D. La. Apr. 27, 2015) (denying a claim that a correctional center was "not up to code[,]" reasoning that while the "situation" is "far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could be found to be deliberately indifferent if they allowed it to continue."); *Patin*, 2012 WL at *16–17 (finding that the plaintiff "has not alleged a specific risk of harm or that any actual harm has occurred as a result of the fire and electrical system at the prison.").

above the ground. *Id.*

As above, Plaintiff fails to state a plausible claim concerning beds which are too high and which exceed the facility's capacity. That the number or height of the beds may violate unidentified safety or health rules, regulations, or codes does not render Plaintiff's claim plausible. The violation of a safety or health code would only be "instructive in certain cases," would only establish recommended goals, and would "not establish the constitutional minima . . . ." *Bell*, 441 U.S. at n. 27.[11] This claim should be dismissed.

**5. Lincoln Parish Detention Center**

Plaintiff names Lincoln Parish Detention Center as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Here, Lincoln Parish Detention Center does not qualify as a juridical person. Accordingly, Plaintiff's claims against it should be dismissed.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Calvin L. Redd's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

---

[11] See *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is not constitutionally required to observe all the safety and health standards applicable to private industry. Nor is it bound by the standards set by the safety codes of private organizations. Standards suggested by experts are merely advisory. A federal court required to gauge the conduct of state officials must use minimum constitutional standards as the measure." (citations omitted).

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Summary Judgment, [doc. # 10], and "Motion for Attorney," [doc. # 11], be **DISMISSED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 30th day of April, 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE